**FILED**

**March 27, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 8:02 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| **Karol Scott,** | ) | **Docket No. 2016-04-0313** |
| **Employee,** | ) | |
| **v.** | ) | |
| **The Lord's Table, Inc.** | ) | **State File No. 57767-2016** |
| **Employer,** | ) | |
| **And** | ) | |
| **Eastern Advantage Assurance Co.,** | ) | **Judge Robert Durham** |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING BENEFITS

This matter came before the undersigned Workers' Compensation Judge on March 23, 2017, upon the Request for Expedited Hearing (REH) filed by Karol Scott. Ms. Scott filed the Request to determine if The Lord's Table, Inc. (TLT) is obligated to provide medical benefits for her alleged work-related carpal tunnel syndrome. The dispositive issue is whether Ms. Scott's carpal tunnel syndrome arose primarily out of and in the course and scope of her employment with TLT. The Court finds the evidence submitted by Ms. Scott is insufficient to establish she is likely to prevail at a hearing on the merits regarding the compensability of her alleged injury, thus requiring the Court to deny her request for benefits.

### History of Claim

Ms. Scott is a fifty-three-year-old resident of Doyle, Tennessee who began working for TLT in 2000. Ms. Scott testified TLT makes bar stools, which often require the placement of images and logos on the covering for the seats and backs. Since her time with TLT, Ms. Scott has worked in a variety of positions, including construction, which required the use of a variety of drills, nail guns and other air tools. She also worked in shipping and packaging for some years.

Approximately five years ago, Ms. Scott was forced to take a few years off work to care for her mother. Upon her return to TLT in [insert Month, year], Ms. Scott initially

1

worked in the shipping department, but was soon transferred to the sewing department, where she began working in silk-screening. Prior to her transfer to the sewing department, Ms. Scott had not experienced any problems with her hands or upper extremities.

Ms. Scott testified the silk-screening process required her to cut heavy fabric, plastic, and leather with a knife and often involved imprinting 500 to 1,000 stool seats in a day. The process required her to repetitively stand a metal plate on one end, forcefully press it down flat on the fabric with both hands, and then draw the plate toward her body. Although Ms. Scott had experienced problems with her hands prior to the week of July 14, 2016, it was during this week that she silk-screened a particularly large order and suffered debilitating pain and swelling. Upon notifying her supervisor, TLT referred her to Dr. Alan Drake's office where she saw Katrina Huff, P.A.-C. P.A. Huff noted Ms. Scott began experiencing symptoms in August 2015. After conservative treatment failed, she recommended Ms. Scott see Dr. Jeffrey Hazlewood for an EMG/PNCV test for carpal tunnel syndrome; however, no causation opinion was provided. (Ex. 3.)

Upon seeing Ms. Scott, Dr. Hazlewood noted Ms. Scott reported a gradual onset of her symptoms with "repetitive use of her hands, sewing, and using hand tools and air guns, etc.;" however, she did not complain of an acute event. He conducted an EMG/PNCV test for the right upper extremity that revealed moderately severe to severe carpal tunnel syndrome on the right side. He referred her back to Dr. Drake for further care, but did not give an opinion as to causation. (Ex. 4.)

At this point, TLT provided Ms. Scott with a panel of orthopedists, and she chose Dr. John Turnbull to provide authorized treatment. Dr. Turnbull noted Ms. Scott stated she had suffered from symptoms in her hands for several years, but they had been exacerbated by silk-screening. He further noted she asserted she had worked the same job for several years, but took off work between 2008 and 2009 at which time she suffered from hand pain. Upon re-employment, her hand pain worsened. Dr. Turnbull noted the EMG/PNCV test showed severe right carpal tunnel syndrome with some evidence of sensory polyneuropathy. (Ex. 5.)

Regarding causation, Dr. Turnbull stated that since Ms. Scott had symptoms during the time she was off work caring for her mother, he would consider her current condition to be an "exacerbation of a pre-existing condition," and "based on the 'new Tennessee work compensation law'" did not believe she sustained a work-related injury. However, he did indicate the carpal tunnel syndrome was sufficiently serious to make surgery necessary. *Id.*

Based on this opinion, TLT denied Ms. Scott's claim. Ms. Scott testified she has not missed any work because of her condition and is training others to do the silk-screening, although she still does it when necessary.

## Findings of Fact and Conclusions of Law

As in all workers' compensation actions, Ms. Scott, as the claimant, has the burden of proof on the essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she only has to come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits in order to meet her burden. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

In order to prevail, Ms. Scott must establish she suffered an accidental injury that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2016). An aggravation of a pre-existing condition is only compensable to the extent that the aggravation "arose primarily out of and in the course and scope of employment." *Id.*

Ms. Scott must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016). Thus, lay testimony must generally be corroborated by expert medical testimony in order to meet the burden of proof regarding causation. *See Scott, supra,* at *12.

In this instance, the only medical opinion offered regarding causation was that of Dr. Turnbull, the authorized treating physician. The authorized physician's opinion regarding causation is entitled to a presumption of correctness. Tenn. Code Ann. § 50-6-204(a)(3) (2016). Dr. Turnbull's opinion as to causation was that, given the fact that Ms. Scott suffered from symptoms while off-work taking care of her mother, he felt her current symptoms were an exacerbation of a pre-existing condition and her work as a silk-screener was not the cause, as defined by statute, of her carpal tunnel syndrome.[1] There is no other medical evidence sufficient to rebut the presumption of correctness afforded Dr. Turnbull's opinion, and therefore, the medical records provided do not establish Ms. Scott is likely to prevail on the issue of causation at a hearing on the merits. *McCord, supra,* at *7-8.

For the reasons stated above, the Court concludes Ms. Scott failed to provide

---

[1] Dr. Turnbull did not provide his opinion as to whether Ms. Scott's entire tenure with TLT was the primary cause of her carpal tunnel syndrome. Therefore, the Court did not address this issue at this time.

3

sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits regarding causation. As a result, her request for workers' compensation benefits is denied at this time.

IT IS, THEREFORE, ORDERED that:

1. Ms. Scott's request for workers' compensation benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on **May 15, 2017**, at **2:30 p.m. Central Time**. The parties must call 615-253-0010 or toll-free at 855-689-9049 to participate in the Hearing. Failure to call in may result in a determination of the issues without your further participation.

**ENTERED THIS THE 27ᵗʰ DAY OF MARCH, 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. First Report of Injury
2. Health Insurance Claim Form
3. Dr. Drake's Medical Records
4. Dr. Hazlewood's Medical Records
5. Dr. Turnbull's Medical Records
6. Ms. Scott's Affidavit
7. Wage Records and Job Description
7. Witness statements and photographs
8. Letter from Schuyler Lampley to Ms. Scott denying her clam

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response in Opposition to Employee's Motion for Expedited Hearing
5. Employer's Memorandum of Law with attached exhibits

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 27th day of March, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Karol Scott, Self-Represented Employee | X | | X | 248 Tomahawk Lane Doyle, TN 38559 Klscott_12@yahoo.com |
| Tyler Waterfield, Employer's Attorney | | | X | tswaterfield@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

5